Filed 7/26/23  Trans World Assurance Co. v. Lara CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| TRANS WORLD ASSURANCE COMPANY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RICARDO LARA, as Insurance Commissioner, etc.,<br><br>    Defendant and Respondent. | A163865<br><br>(San Mateo County<br>Super. Ct. No. 19CIV01583) |

Plaintiff Trans World Assurance Company (Trans World) filed a petition for writ of mandate challenging the California Department of Insurance's (CDI) denial of its disclaimers of affiliation under the Insurance Holding Company System Regulatory Act (Ins. Code,[1] § 1215 et seq.; Holding Company Act).  Trans World contends CDI failed to provide it with an evidentiary hearing and otherwise comply with certain statutory procedures as required by law.  The trial court denied Trans World's petition, concluding CDI was not required to conduct an evidentiary hearing on Trans World's disclaimers.  We affirm.

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

# I.

# BACKGROUND

Trans World is a wholly owned subsidiary of TWA Corporation (TWA) and is licensed to sell life insurance in California and various other states. As such, Trans World reports to CDI as a member of an insurance holding company system subject to the Holding Company Act. In 2000, Trans World and CDI identified AMFI Corp. and American Fidelity Life Insurance Company (AFLIC) as affiliates under the Holding Company Act. In later years, both CDI and Trans World identified various affiliates via CDI examinations and Trans World's annual statements and transaction notices.

In 2012, CDI concluded that Five Flags Banks, Inc. and its subsidiary banks, Warrington Bank, Bank of the South, and First Navy Bank (jointly, the banks), should be considered affiliates "based on common management, principal banking relationships, and shared investment strategies." This conclusion was based on (1) two common directors, Marilyn Woodbury Hess and William Woodbury; (2) Trans World and its affiliate, AFLIC, had principal banking relationships with the banks; and (3) Trans World, AFLIC, and two of the banks participated in a mortgage loan. CDI requested that Trans World "report its stock ownership" in these entities, disclose these entities as affiliates, and "report all material transactions with these entities."

In 2013, Trans World submitted a disclaimer of affiliation as to Bank of the South, Warrington Bank, and First Navy Bank. In connection with that disclaimer, Trans World argued there was no direct or indirect control between Trans World and the banks, noting the banks neither owned stock in Trans World nor extended loans or credit to Trans World. It also submitted two letters stating Marilyn Woodbury Hess, a director of both Trans World

and Warrington Bank, was unable to control either entity, and Warrington Bank had not been involved in Trans World's operations. CDI granted the disclaimer as to Ms. Hess only. CDI also subsequently granted a disclaimer as to Mr. Woodbury.

In 2016, CDI sent a draft organization chart to Trans World and requested it identify any incorrect information regarding listed entities. Trans World objected to the inclusion of ownership positions in AMFI Corp. and AFLIC, claiming that TWA had "no interest" in those entities and the inclusion of such entities "is an invasion of privacy" and "demonstrates an agenda, not an unbiased examination." It further claimed the information contained in the chart "is riddled with incorrect or unverifiable information and is internally inconsistent." Trans World asserted the draft chart indicated CDI improperly disclosed confidential business information and sought to invade the privacy of "beneficial owners of TWA Corp.'s stock who have elected to hold their positions in 'street name.' "

CDI denied the allegations in Trans World's correspondence and again requested that Trans World identify any errors in the draft organizational chart. CDI also requested that Trans World provide an explanation and supporting documentation as to each error. In response, Trans World again objected to the draft organizational chart as a whole and asserted (1) the chart "is indecipherable and many of the lines and arrows connect to entities about which Trans World has no interest or knowledge," (2) the chart's terminology was "undefined and vague and ambiguous," and (3) "[m]any of the percentage entries are unverifiable by Trans World since they are based on the confidential information of other businesses to which Trans World does not have access."

3

In 2016, CDI conducted an examination of Trans World and identified AMFI Corp., AFLIC, Little Sabine, Inc., MB Corporation, TBH Corporation, Dunes Motel, Inc., and the banks as affiliates of Trans World. CDI also specifically explained its determination to include Five Flags Banks, Inc. as an affiliate, while also acknowledging the disclaimer of affiliation granted to Ms. Hess. Trans World agreed to include Five Flags Bank, Inc. as its affiliate due to its stock ownership in the bank.

Following this examination, CDI notified Trans World that it and AFLIC "should be part of the same holding company group" due to their "affiliation through ownership and management." The letter justified this decision due to "the level of inter-company ownership . . . ; common directors and officers . . . ; shared operations; and joint investments." The letter also noted CDI and the Florida Office of Insurance Regulation would conduct coordinated examinations on an ongoing basis.

Trans World objected to CDI treating Trans World and AFLIC as part of the same holding company group. It also disputed CDI's conclusion that it was affiliated with the other entities, and claimed it had submitted several disclaimers of affiliation as to AMFI Corp., AFLIC, Little Sabine, Inc., MB Corporation, TBH Corporation, Dunes Motel, Inc., and Five Flags Corporation.

In connection with this correspondence, Trans World submitted "Form D," entitled "Disclaimer of Affiliation Pursuant to California Insurance Code § 1216.4." This disclaimer, on behalf of Trans World and TWA, contested any affiliation with AMFI Corp., AFLIC, Little Sabine, Inc., MB Corporation, TBH Corporation, Dunes Motel, Inc., and Five Flags Corporation. The disclaimer asserted (1) Trans World did not directly or indirectly control the disclaimed entities, and (2) Trans World and TWA were

4

not directly or indirectly controlled by or under common control with any of the disclaimed entities. In support of its position, Trans World referenced CDI's letter notifying it of the coordinated examination and its letter in response.

CDI disallowed the disclaimer as incomplete. It further noted CDI had not received any other disclaimer from Trans World apart from the resolved disclaimer regarding Ms. Hess.

Trans World then submitted an "Amended Disclaimer." That submission contained a brief cover letter and the following attachments: (1) Trans World's 2013 disclaimer; (2) two letters from Trans World objecting to CDI's draft organizational chart; (3) CDI's letter to Trans World regarding its determination that Trans World and AFLIC "should be part of the same holding company group"; (4) Trans World's letter to CDI asserting it had outstanding disclaimers unresolved by CDI; (5) Trans World's response to CDI's letter regarding Trans World and AFLIC; and (6) Trans World's 2016 disclaimer. CDI again disallowed the disclaimer as incomplete pursuant to section 1215.4, subdivision (*l*) (section 1215.4(*l*)).

Shortly thereafter, Trans World submitted a letter to CDI to "supplement" its 2013, 2016, and amended disclaimers. The supplement asserted neither Trans World nor TWA had any stock ownership in, or control of, AFLIC, AMFI Corp., the banks, and "certain investment entities identified in correspondence with [CDI] and the Disclaimers." The supplement stated the 2013 disclaimer encompassed AFLIC, AMFI Corp., Bank of the South, and Warrington Bank, and CDI had not held a hearing on the disclaimer. The supplement also claimed its objections to CDI's draft organizational chart constituted disclaimers, for which there had been no hearing. Finally, the supplement provided additional information

5

challenging CDI's conclusion that Trans World and AFLIC should be part of the same holding company system. It noted Trans World and TWA (1) own 26 percent of the stock in AMFI Corp. and no stock in AFLIC, (2) share one common director, Ms. Hess, who is one of five directors, (3) do not have common officers, and (4) do not have joint operations. The supplement concluded by requesting a hearing under section 1215.4(*l*) on its disclaimers and objections.

In response, CDI informed Trans World it had previously resolved the 2013 disclaimer. CDI also summarized the bases for its affiliation findings and explained why it disallowed Trans World's 2016 disclaimer and amended disclaimer. Notably, CDI's letter emphasized Trans World and TWA's 26.8 percent ownership in AMFI Corp. (the parent company of AFLIC), past submissions by Trans World acknowledging AFLIC and Little Sabine, Inc. as affiliates, and comments by Trans World's president that it only participates in mortgage loans with affiliates. CDI again requested Trans World to "respond substantively" to CDI's affiliation findings and "provide[] full disclosure of 'all material relationships and bases for affiliation . . . as well as the basis for disclaiming affiliation.' "

In March 2017, Trans World submitted a further supplement to its disclaimers. That further supplement again noted Trans World was not a "direct affiliate" of AFLIC, and argued Trans World is separately managed, does not own any AFLIC stock, has no proxy agreement that would allow it to vote AFLIC shares, does not have a representative on AFLIC's board, has never attempted to exert control over AFLIC, and does not share financial information with AFLIC. Trans World noted that while AFLIC services its policies, it does so on a fee-for-service basis. Trans World further emphasized

6

that while it may share some investments with AFLIC, it is a passive investor and those investments are managed by other entities.

As to AMFI Corp., Trans World argued it is merely a passive investor, does not control AMFI Corp., does not have a representative on the board or in management of AMFI Corp., and has never attempted to control AMFI Corp. or vote, and only once attended a board meeting. For the remaining entities, Trans World argued those were long-term passive investments over which it has never sought to exert control or management.

After reviewing these materials, CDI informed Trans World that it "remains unconvinced that there is no affiliation . . . between and among [Trans World], [TWA]; [AFLIC]; AMFI Corp.; Five Flags Bank, Inc. (FFB); and FFB's three subsidiary banks: Bank of the South; Warrington Bank and First Navy Bank." CDI explained the supplemental materials failed to identify all bases for affiliation or describe Trans World's inability to control the affiliates, and CDI noted its intent to deny the disclaimer. CDI acknowledged Trans World could request a hearing on its disclaimer, and CDI would provide a transcribed public hearing at which Trans World could present documentary evidence and sworn testimony.

In response, Trans World requested that CDI provide "an adjudicative hearing before the [Insurance] Commissioner or an administrative law judge" with the right to issue discovery requests, present evidence, and cross-examine staff from CDI and the Florida Office of Insurance Regulation. Trans World also asserted CDI would be required to provide notice and an opportunity to be heard to all alleged affiliates of Trans World.

On July 3, 2018, CDI set a hearing date of August 10, 2018 for Trans World "to address CDI staff regarding [its] disclaimer and CDI's disallowance of the disclaimer," "in accordance with [section] 1215.4(*l*), which provides for

7

notice and opportunity to be heard." It stated its disallowance would take immediate effect if Trans World did not attend the meeting. Trans World agreed to attend the scheduled meeting, but argued "CDI Staff does not have authority to deny the Disclaimers and such a meeting is not a substitute for the adjudicatory hearing by the [Insurance] Commissioner . . . that is required by [section] 1215.4(*l*)."

Prior to the meeting, Trans World submitted a summary of its positions and a declaration from its president, Charles Royals (Royals declaration), in support of the disclaimers. Trans World reiterated its position that, despite stock ownership in excess of 10 percent, it does not in fact control any entity. Trans World also noted it did not share any common directors or officers as the only two individuals who overlap companies, Ms. Hess and Mr. Woodbury, received disclaimers.

In August 2018, Trans World met with seven CDI staff and officials, including Susan J. Stapp, CDI's deputy general counsel, and Valerie J. Sarfaty, assistant chief counsel of CDI's Corporate Affairs Bureau II. Following the meeting, Trans World submitted further information about Trans World's board of directors and a proposed resolution.

In February 2019, CDI informed Trans World it would disallow its second disclaimer and amended disclaimer, as supplemented. CDI concluded the information provided by Trans World "do[es] not overcome the evidence that demonstrate[s] that Applicants [(TWA and Trans World)] are affiliated with the Disclaimed Entities because Applicants are under common control with AMFI Corp. and AFLIC." CDI based its conclusion on evidence of common control, common ownership, and prior Trans World filings acknowledging affiliation.

8

After Trans World continued to object to the meeting as satisfying the statutory hearing requirement and declined to withdraw its disclaimers, CDI sent a letter to Trans World, stating in relevant part, "[T]he [Insurance] Commissioner hereby disapproves Applicants' disclaimer of affiliation application."

Trans World subsequently filed a petition for peremptory writ of mandate with the superior court. That petition alleged Trans World had filed various disclaimers of affiliation "which never have been the subject of a hearing and findings by the [Insurance] Commissioner." The petition asked the court to "set aside" CDI's decision disallowing Trans World's disclaimers of affiliation and requiring it to register and file reports identifying AFLIC, AMFI Corp., and the other entities as affiliates. The petition further requested the court to order CDI to grant its disclaimers or, alternatively, convene a hearing regarding the disclaimers.

The trial court issued a tentative ruling denying Trans World's petition. The court concluded due process did not require CDI to provide a public evidentiary hearing, and Trans World did not demonstrate the impact of CDI's ruling was " 'so severe' " as to require a formal evidentiary hearing. The court also concluded the California Administrative Procedure Act (Gov. Code, § 11340 et seq.; APA) is inapplicable because section 1215.4(*l*) does not require an evidentiary hearing. Trans World did not contest the tentative or request a statement of decision. The trial court adopted its tentative ruling and entered judgment in favor of the Insurance Commissioner (Commissioner). Trans World timely appealed.

## DISCUSSION

Trans World contends the trial court erred in denying its petition because the Holding Company Act required CDI to comply with the requirements of section 1215.4(*l*) and provide it with an evidentiary hearing by the Commissioner on its disclaimers of affiliation. In response, CDI asserts the hearing conducted by its staff satisfied its statutory obligations.

### A. *Standard of Review*

The parties agree this action is one of traditional mandamus arising under Code of Civil Procedure section 1085.[2] "In such actions, the standard of review can be quite deferential where, for example, the agency is acting as a quasi-legislative body in adopting a regulation in accordance with a legislative delegation of authority." (*Matteo v. Department of Motor Vehicles* (2012) 209 Cal.App.4th 624, 630.) However, where an agency is instead interpreting a controlling statute, "the standard of review is much less deferential. [Citations.] Under these circumstances, we independently judge the text of the statute while 'taking into account and respecting the agency's interpretation of its meaning.' [Citation.] As the California Supreme Court explains: 'Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context [(i.e., whether the agency's interpretation is embodied in a formal rule or less formal representation)], it may be helpful, enlightening, even convincing. It may sometimes be of little worth.' " (*Id.* at pp. 630–631.)

---

[2] Trans World notes its first amended petition seeks relief under Code of Civil Procedure sections 1085 and 1094.5, but "submits that Code of Civil Procedure Section 1085 applies."

At issue here is whether section 1215.4(*l*) and section 1215, subdivision (d) (section 1215(d)) require CDI to conduct an evidentiary hearing before either the Commissioner or an administrative law judge. CDI's interpretation of these provisions does not appear to arise from formal agency decisionmaking, but rather a position adopted by CDI under more informal circumstances. As such, we find CDI's interpretation of section 1215.4(*l*) and section 1215, subdivision (k) to be of limited significance, and rely primarily on our own independent judgment. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–13.)

## B. *Whether Trans World Is Entitled to an Evidentiary Hearing*

Trans World does not contend CDI's failure to provide an evidentiary hearing violated its due process rights.[3] Instead, its brief asserts "[t]he issue to be determined is whether Sections 1215(d) and 1215.4(*l*) require an evidentiary hearing." Without providing any meaningful statutory analysis, Trans World asserts it is "entitled to an adjudicative hearing before the Commissioner with notice, a court reporter, sworn testimony, exhibits and findings with the safeguards of the Charter 4.5 of the APA to rebut the presumption of control." It concludes "[i]t is hard to imagine" the Commissioner making specific factual findings "without receiving evidence on control in fact, *i.e.* an evidentiary hearing."

---

[3] We note one of the "Questions Presented" in Trans World's opening brief asks: "Did the Trial Court err by refusing to consider any of the specific factors [required by certain authorities] in determining whether Due Process requires a hearing under the circumstances of this case?" But Trans World's brief does not argue the present dispute involves a private interest that would trigger due process protection or otherwise explain how the principles of due process should be applied here.

## 1. Relevant Statutory Framework

The Holding Company Act governs registration of insurers who are members of an insurance holding company system. "An 'insurance holding company system' consists of two or more affiliated persons, one or more of which is an insurer." (§ 1215, subd. (h).) Affiliation arises if an individual or entity "directly, or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, the [individual or entity] specified." (§ 1215, subds. (a), (m).) The Holding Company Act further defines " 'control' " as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract other than a commercial contract for goods or nonmanagement services, or otherwise, unless the power is the result of an official position with or corporate office held by the person. Control shall be presumed to exist if any person, directly or indirectly, owns, controls, holds with the power to vote, or holds proxies representing, more than 10 percent of the voting securities of any other person. This presumption may be rebutted by a showing that control does not exist in fact pursuant to the filing of a disclaimer of affiliation in accordance with subdivision (*l*) of Section 1215.4. The commissioner may, after furnishing all persons in interest notice and opportunity to be heard, determine that control exists in fact, notwithstanding the absence of a presumption to that effect." (§ 1215, subd. (d).)

Section 1215.4(*l*) further provides: "Any person may file with the commissioner a disclaimer of affiliation with any authorized insurer. A disclaimer of affiliation may be filed by an insurer or any member of an insurance holding company system. The disclaimer shall fully disclose all material relationships and bases for affiliation between the person and the

12

insurer, as well as the basis for disclaiming an affiliation. After a disclaimer has been filed, the insurer is relieved of any duty to register or report under this section that may arise out of the insurer's relationship with the disclaimed person unless and until the commissioner disallows the disclaimer. The commissioner shall disallow the disclaimer only after furnishing all parties in interest with notice and opportunity to be heard and after making specific findings of fact to support the disallowance. If the commissioner at any time determines that the information disclosed in the disclaimer is incomplete or inaccurate, the commissioner may disallow the disclaimer." (§ 1215.4, subd. (*l*).)

## 2. Hearing Requirements

As noted above, section 1215.4(*l*) only requires the Commissioner to (1) "furnish[] all parties in interest with notice"; (2) provide an "opportunity to be heard"; and (3) if disallowing the disclaimer, "mak[e] specific findings of fact to support the disallowance." Trans World argues the "opportunity to be heard" must be interpreted as requiring an evidentiary hearing. We disagree.

We are unaware of any authority that evaluates the phrase "opportunity to be heard" in section 1215.4(*l*). Nor has Trans World cited any such authorities. However, the phrase "notice and opportunity to be heard" mirrors language used in procedural due process jurisprudence and provides useful guidance. (See, e.g., *Sustainability of Parks, Recycling & Wildlife Legal Defense Fund v. County of Solano Dept. of Resource Management* (2008) 167 Cal.App.4th 1350, 1359 ["procedural due process requires reasonable notice and opportunity to be heard before the government may deprive a person of a significant property interest"].)

13

" 'What safeguards comport with due process or what due process requires under specific circumstances varies, as not every context to which the right to procedural due process applies requires the same procedure. The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner. Consequently, due process is a flexible concept, as the characteristic of elasticity is required in order to tailor the process to the particular need. [Citations.] Thus, not every situation requires a formal hearing accompanied by the full rights of confrontation and cross-examination. [Citation.] "What due process does require is notice reasonably calculated to apprise interested parties of the pendency of the action affecting their property interest and an opportunity to present their objections." ' " (*Barri v. Workers' Comp. Appeals Bd.* (2018) 28 Cal.App.5th 428, 465–466, italics omitted.)

Courts also have interpreted similar phrases in other statutes. For example, Code of Civil Procedure section 2023.030 provides for "notice to any affected party, person, or attorney" and an "opportunity for hearing." In that context, the phrase "opportunity for hearing" has not been interpreted as requiring an evidentiary hearing or even an opportunity to present oral testimony. (*Seykora v. Superior Court* (1991) 232 Cal.App.3d 1075, 1082.) Rather, the trial court has discretion in conducting the proceedings, so long as the parties have a reasonable opportunity to present their position. (*Ibid*.) Likewise, the California Supreme Court has explained the term "hearing" does not necessarily encompass a right to an oral presentation. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1247–1249.)

We find a similar interpretation is appropriate here and decline to interpret "opportunity to be heard" in section 1215.4(*l*) as requiring an evidentiary hearing. Rather, Trans World was entitled to a meaningful

14

opportunity to present its position and objections.  (See *Barri v. Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.App.5th at p. 466.)  Our interpretation of the phrase "opportunity to be heard" also finds support in certain principles of statutory interpretation.  "In construing a statute, it is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted . . . ."  (*People v. Massicot* (2002) 97 Cal.App.4th 920, 925; accord, Code Civ. Proc., § 1858 ["In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted"].)  Nothing in the statute indicates the Legislature sought to require CDI to conduct an evidentiary hearing on disclaimers of affiliation, and it is not our role to impose such a requirement.

Here, Trans World was provided the required opportunity to be heard. Specifically, CDI requested that Trans World provide support for its disclaimers of affiliation and accepted supplemental materials from Trans World on these issues.  CDI then scheduled a meeting to evaluate these disclaimers pursuant to section 1215.4(*l*).  CDI identified its staff who would be present, along with the issues Trans World "should be prepared to address."  In advance of the meeting, Trans World submitted to CDI a detailed letter outlining its position and enclosing relevant documents.  Trans World also submitted in advance of the meeting a declaration from its president and an "Offer of Proof as to the evidence that would have been offered by Trans World" during an evidentiary hearing.  Trans World's representative and its counsel attended the meeting and provided information to CDI about its disclaimers, including information regarding its

15

board of directors. In light of the foregoing, CDI satisfied its obligation to provide Trans World with an "opportunity to be heard."

While Trans World questions how CDI can fulfill its statutory duty to make " 'specific findings of fact' " without an evidentiary hearing, Trans World fails to cite any authority to support its point. Moreover, CDI identified all of the relevant facts upon which it relied in rejecting Trans World's disclaimers of affiliation. Trans World does not claim CDI misrepresented or failed to identify any relevant facts. Nor does Trans World explain what additional factual information it was unable to provide without an evidentiary hearing. Accordingly, Trans World has not demonstrated an evidentiary hearing is required for CDI to make "specific findings of fact," as required by section 1215.4(*l*).

Trans World also disputes two cases cited by the trial court in support of its conclusion that section 1215.4(*l*) does not impose an evidentiary hearing requirement: *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197 and *Oberholzer v. Commission on Judicial Performance* (1999) 20 Cal.4th 371.[4] The trial court cited these authorities in connection with the proposition that procedural due process does not necessarily require an evidentiary hearing, and Trans World had not demonstrated the issues raised by its disclaimers of affiliation justify the burden of a full evidentiary hearing. Trans World does not dispute the legal conclusions for which these cases are cited—namely, that due process merely requires an opportunity to be heard " 'at a meaningful time and in a meaningful manner.' " (See *Today's Fresh Start*, at p. 205.) Instead, Trans

---

[4] Trans World also objects to the trial court's reliance on "*Matthews v. Eldridge*." However, the "Order Denying [Trans World's] Petition for Writ of Mandate" does not cite a case with this title.

World attempts to draw distinctions between the investigation and meetings in those cases and here. However, nothing in those cases suggests the meeting and discussions between CDI and Trans World were insufficient to constitute an "opportunity to be heard" in this instance.

In sum, neither section 1215(d) nor section 1215.4(*l*) require CDI to conduct an evidentiary hearing on a disputed disclaimer of affiliation. Rather, CDI was required to provide a meaningful opportunity to be heard, and it did so. The trial court did not err in concluding Trans World was not entitled to an evidentiary hearing.

### 3. Delegation of Authority

Apart from the adequacy of the hearing, Trans World asserts only the Commissioner or an assistant to the Commissioner is authorized to rule on its disclaimers of affiliation. Trans World contends none of the CDI staff present at the meeting satisfied this requirement. It further asserts any delegations were by a deputy commissioner "who had no right of delegation" under section 1215, subdivision (c).

#### a. *Relevant factual background*

In connection with its opposition to Trans World's petition, CDI submitted a declaration from Valerie J. Sarfaty, the assistant chief counsel of the Corporate Affairs Bureau II at CDI (Sarfaty declaration). The Corporate Affairs Bureau oversees licensing, oversight, and enforcement of regulated entities and persons, "including processing applications and filings submitted under the [Holding Company Act]."

The Sarfaty declaration states the chief deputy Insurance Commissioner of California "specifically delegated authority to me to act on her behalf in performing all duties necessary for purposes of managing the Corporate Affairs Bureau" pursuant to section 7 and Government Code

17

section 18572. Sarfaty asserts this delegation "was in effect during [CDI's] August 10, 2018, meeting" with Trans World.

The Sarfaty declaration further states the chief deputy Insurance Commissioner of California "specifically delegated authority to then-deputy general counsel, Susan J. Stapp, to act on the Commissioner's behalf in performing all actions necessary for purposes of managing the [Regulatory and Legal Services Division of CDI's] Legal Branch," and she believes this delegation was in effect during the Trans World meeting. The Regulatory and Legal Services Division "ensures all regulated entities' and persons' compliance with the California Insurance Code."

The Sarfaty declaration explains that reviewing and disallowing disclaimers fell within her and Stapp's delegated authority to act on behalf of the chief deputy Commissioner, and they acted within this role when participating at the Trans World meeting and reviewing and authorizing the subsequent letter disallowing Trans World's disclaimers of affiliation.

Trans World objected to the Sarfaty declaration and moved to strike it. Trans World argued the declaration lacked foundation, constituted an impermissible attempt to introduce new evidence outside the administrative record, was irrelevant because the delegations did not comply with section 1215, subdivision (c), and contained inadmissible hearsay and legal conclusions. Trans World requested the court strike the declaration on these grounds.

In denying the petition, the trial court did not include an express ruling on these objections.[5]

---

[5] We need not rule on CDI's argument that Trans World waived its objections to the Sarfaty declaration. Even assuming the objections were preserved, Trans World has the burden to renew the objections in the appellate court. (Accord, *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)

### b. Analysis

Pursuant to section 1215, subdivision (c), " 'Commissioner' " is defined as the "Insurance Commissioner of the state and any assistant to the Insurance Commissioner designated and authorized by the commissioner while acting under their designation as the Insurance Commissioner." Section 7 provides: "Whenever, by the provisions of this code, a power is granted to a public officer or a duty imposed upon such an officer, the power may be exercised or the duty performed by a deputy of the officer or by a person authorized pursuant to law by the officer, unless it is expressly otherwise provided." (See also Gov. Code, § 18572 [same].)

We are unaware of any authority that would suggest a deputy insurance commissioner does not qualify as an "assistant to the Insurance Commissioner" under section 1215, subdivision (c). Rather, section 7 explicitly provides that a deputy of the officer may perform the powers granted to that officer. And the Sarfaty declaration states the deputy commissioner delegated to Sarfaty "all duties necessary for purposes of managing the Corporate Affairs Bureau," which includes the task of "processing applications and filings submitted under the [Holding Company Act]." Accordingly, Trans World's disclaimers appear to fall within the scope of filings managed by the Corporate Affairs Bureau, and Sarfaty was properly delegated the authority to manage the processing and consideration of those filings.

Likewise, Sarfaty was properly delegated authority to resolve the pending disclaimers. And CDI—with her approval and authorization—sent

---

While Trans World noted its objections before the trial court, it has not argued the validity of those objections on appeal. Accordingly, the validity of those objections are not before the court.

Trans World a letter denying the disclaimers and setting forth the specific factual findings upon which the denial was based. Specifically, the denial outlined various findings regarding (1) common control, (2) Trans World's past filings acknowledging certain affiliations, and (3) AFLIC's annual statements acknowledging certain affiliations. The denial also set forth its assessment of the Royals declaration on the findings of affiliation. This denial satisfies CDI's statutory obligation to provide "specific findings of fact." (See § 1215.4, subdivision (*l*).)

### 4. Notice of Hearing

Trans World also asserts (1) it was entitled to notice, (2) the entities identified by CDI as affiliates should have received notice of the hearing under section 1215.4(*l*) because "[t]hey all have important interests in the outcome of any hearing on the disclaimers," and (3) no notice was provided. However, Trans World raises these arguments in a purely conclusory fashion. Trans World does not cite any authority or evidence or otherwise raise a substantive argument that notice to Trans World was insufficient or that the affiliates were entitled to notice. Accordingly, Trans World has waived its challenge to the adequacy of the notice. (See *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [claim waived when appellant fails to support it with " 'reasoned argument and citations to authority' "]; see also *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [failure to brief issue on appeal waives it].) While Trans World attempts to address the scope of the notice in its reply brief, it again does so with scant analysis and no citation to relevant legal authorities. Moreover, "[w]e do not consider arguments raised for the first time in a reply brief." (*Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 636, fn. 8.)

Trans World claims CDI "did nothing in response to the Trans World disclaimers." As discussed above, that statement is false. Here, CDI provided notice of the hearing, conducted a hearing, and issued specific findings regarding control. CDI complied with its statutory obligations and was not required to provide Trans World with additional procedures not required by statute or law.[6]

## C.  APA Does Not Apply

While Trans World argues in passing that it is entitled to a hearing "with all the safeguards of the APA," it does not support this position with any substantive argument or citations to authority. Accordingly, Trans World has waived any such argument. (*Behr v. Redmond, supra,* 193 Cal.App.4th at p. 538 [failure to brief issue on appeal waives it].)

**III.**

**DISPOSITION**

The judgment is affirmed. Respondent may recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[6] Because we conclude CDI complied with its statutory obligations and the trial court did not err in denying Trans World's petition, we need not address whether any error was harmless.

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A163865
*Trans World Assurance Company v. Lara*